Opinion issued
January 26, 2012



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-08-00757-CV

———————————

GM Oil PROPERTIES, Inc., GARY MOORES, 

and BILL O. WOOD, Appellants

V.

SHERIDAN
WADE,
Appellee



 



 

On Appeal from the 133rd
District Court

Harris County, Texas



Trial Court Case No. 2006-53389

 



 

 

MEMORANDUM
OPINION

In
this interlocutory appeal, Bill O. Wood, challenges the trial court’s August 4,
2010 order denying his motion to compel arbitration between himself and Sheridan
Wade.  The order expressly applies only to
Wade’s claims against Wood in Wood’s individual capacity.[1]  Wood raises two issues in which he contends
that Wade is required to arbitrate these claims pursuant to a provision found
in the corporate bylaws of GM Oil Properties, Inc., a company of which Wood is
a corporate officer, and Wade is a former shareholder.

We affirm the trial court’s
order denying Wood’s motion to compel arbitration.

Background

A.      Sheridan Wade’s Claims against Bill Wood,
Individually

Sheridan Wade sued Bill O. Wood
in his individual capacity for acts and omissions related to an alleged
business partnership between Wade and Wood pertaining to a business venture
involving GM Oil.  Among Wade’s causes of
action against Wood in his individual capacity are claims for breach of contract
and for breach of fiduciary duty.  Wade
alleges that Wood breached two contracts that he had entered into with her in
the context of their business partnership and that he breached his fiduciary
duty to Wade as her business partner.  

With respect to her claims
against Wood in his individual capacity, Wade makes the following allegations:[2] 

·       In early 2005, Wade
formed a business partnership with Scott Davis, and they agreed “to a diverse
business plan including real estate investments, financial services, and oil
and gas investments.”

 

·       Wade and Davis met
John Preston and Bill Wood with whom they “agreed to all join together to
collectively as partners pursue . . . business opportunities.” 

 

·       Wood represented to
Wade, Davis, and Preston that “he was well versed in oil and gas and knew of a
potential investment in Oklahoma—the ‘GM Oil deal.’”

 

·       Wood stated that he
needed Wade’s and Davis’s “services and expertise to find potential investors,
and he offered to work with them in obtaining the property for the benefit of
his partnership with [Wade], Davis, and Preston.” 

 

·       Wade and her three
partners “agreed the first project of the partnership would for the purposes of
obtaining the Oklahoma property (the GM Oil deal) and they would divide the
partnerships’ ownership interest as follows: [Wade] would own 10%, Davis 30%,
Preston 30% and []Wood 30%.”

 

·       Wade was “convinced
by Wood’s assurances that the GM Oil deal would be extremely financially
rewarding for her and all involved.”  

 

·       Wade and Davis told
“Wood that a private placement memorandum would have to be prepared, along with
a detailed analysis of the project.” 

 

·       Wade gathered “all
pertinent information and assimilated the same into an organized and detailed format,”
“evaluated and studied the potential of the GM Oil deal, and prepared summaries
of the data.”  Wade and Davis also worked
to generate interest by investors “in the deal.”

 

·       Wade and Davis asked
Wade’s father to assist in obtaining a loan for the project. 

 

·       Wade, Davis,
Preston and [] Wood offered Wade’s father “4% of the venture and [sic] [GM Oil]
company as compensation for locating the financing.”  

 

·       Wade’s father
arranged “for a loan in the amount of $75,000 to provide the necessary capital
to produce the [placement] memorandum.”

 

·       Investing much time
and effort, Wade and Davis “sought out and met with numerous potential sources
of significant financing needed to complete the [GM Oil] deal.”

 

·       Wood “consistently
reassured his partners and told them their efforts would be rewarded” with “the
ownership interests promised.”  Wade,
however, was offered “employment as the Secretary of the corporate entity (GM
Oil) with a salaried position in the company’s offices.”

 

·       Closing on the GM
Oil financing was set for August 25, 2005.

 

·       Before the closing,
“Wood met with [Wade], Davis and Preston in Texas and suddenly represented that
the only way the closing could take place would be if it appeared that [] Wood
held all the stock of the partners (excepting the 4% broker fee)” in “Steadfast
Eastern Oklahoma LLC,” the company the four partners had established for the
purpose of acquiring GM Oil.

 

·       Wood requested that
each partner sign his or her interest in Steadfast Eastern Oklahoma LLC “over
to him for purposes of the closing only.” 

 

·       “Wood, in turn,
promised that immediately after closing he would return the other parties’
ownership interests by conveying to [Wade], Davis, and Preston each 10% of his
ownership of GM Oil, or 10% of his purported 96% equaling a 9.6% ownership in
the shares of GM Oil.”

 

·       Each partner
transferred his or her shares in Steadfast Eastern Oklahoma to Wood with each
retaining one percent interest in the company.

 

·       Wood, Davis,
Preston, and Wade signed a Stockholders’ Agreement evidencing the agreement
regarding the transfer of the Steadfast Eastern Oklahoma stock to Wood and
reflecting Wood’s agreement to tender a portion of his stock interest in GM Oil
to his three partners. 

 

·       “After the closing,
GM Oil issued 10,000 shares of GM Oil stock [to Wade] based on the 1% of
ownership that was excluded from the agreement with Wood.”  

 

·       Wade was “forced to
sell these 1% shares back to the company after a few months because of the
delay in actually receiving her promised job in Oklahoma.” 

 

·       Wade received “value
for the sale of those shares, and she is making no complaint about the issuance
or repurchase of the 10,000 shares of GM Oil in this lawsuit.”

 

·       “Although Wood kept
up the assurances and representations to [Wade] in Houston for a short period
following the final closing, he has failed and refused to convey back the
shares as he promised . . . .” 

 

Wade sued Wood in his
individual capacity for breach of contract, fraud, conversion, breach of
fiduciary duty, and conspiracy.  With
regard to these claims, Wade asserts that Wood breached his oral partnership
agreement with her by failing to transfer 10 percent ownership of GM Oil to
her.  Wade also claims that Wood breached
the written Shareholder’s Agreement by failing to transfer 10 percent of his GM
Oil stock to her.  Wade further asserts
that Wood knowingly made false statements to her to induce her assistance in
acquiring financing and investment funds for GM Oil, which she did.  Finally, Wade asserts that Wood had a
fiduciary duty to her as her business partner and that his conduct constituted
a breach of that duty. 

In addition to suing Wood in
his individual capacity, Wade sued Wood as a representative of GM Oil and as a
representative of its founder and corporate officer, Gary Moores.  Wade also directly sued GM Oil and Moores for fraud and conspiracy.  Wade contends that GM Oil and Moores “aided and abetted” Wood in much of the conduct for
which Wade seeks to hold Wood liable.  

B.      Wood’s Arbitration Claim

Wood answered the suit,
asserting, inter alia, that Wade’s claims were subject to an arbitration
agreement.  Wood also denied that he had
entered into a partnership agreement with Wade or that he had promised that
Wade would receive a 10 percent ownership interest in GM Oil.  Moores, an Oklahoma
resident, and GM Oil, an Oklahoma corporation, each filed a special appearance
contesting personal jurisdiction.  

Asserting that Wade’s claims
against them were subject to an arbitration agreement found in GM Oil’s bylaws,
GM Oil, Moores, and Wood initiated an arbitration
proceeding in Oklahoma before the American Arbitration Association.  In response, Wade requested and obtained a
temporary restraining order in the instant suit, prohibiting GM Oil, Moores, and Wood from proceeding with the Oklahoma
arbitration.  

Wade amended her petition to
include a request for a judicial declaration that her claims are not subject to
arbitration.  Wade also filed a motion
for partial summary judgment regarding the arbitration issue.  

Wood filed a motion to
compel arbitration in the trial court, relying on the following provisions in
GM Oil’s bylaws: 

Section 12.  Miscellaneous.

 

12.01. 
Resolutions of
Controversies and Claims.  In the
event of any controversy of claim, whether based on contract, tort, statute, or
other legal of equitable theory (including any claim of fraud,
misrepresentation, or fraudulent inducement) between or among the parties and
relating to the Corporation (“Dispute”), the parties agree as follows:

. . . .

(b)  Arbitration.

 

If not resolved by mediation,
the parties shall resolve the Dispute by arbitration pursuant to this Section
and the then current rules and supervision of the American Arbitration
Association. . . .

 

. . . .

(e)  Covered
Parties.  The duties to mediate and
arbitrate shall extend to any Director, officer, employee, Shareholder,
principal agent, trustee in bankruptcy or otherwise, affiliate,
subsidiary, third-party beneficiary, or guarantor of a party making or defending
a claim that would otherwise be subject to this Section. . . . 

 

Wood asserted that Wade’s claims
against him fell within the scope of the arbitration provision in the bylaws.  Specifically, Wood averred that (1) Wade’s
claims “relat[ed] to the
Corporation”; that is, they related to GM Oil, and (2) Wood was a “covered
party” because she had been a shareholder in GM Oil “from approximately August
31, 2005 through November 16, 2005,” during which time the bylaws were in
effect. 

GM Oil and Moores did not join in the motion to compel
arbitration.  Their special appearances remained
pending before the trial court.  

The trial court conducted a
hearing on Wood’s motion to compel arbitration on October 8, 2007.  The parties, including Wade’s counsel, made
clear to the trial court that the only issue to be decided was whether Wood
could compel arbitration.  No
determination would be made with respect to arbitration and Wade’s claims
against GM Oil and Moores because the special
appearances were still pending.  

Ten months later, on August
7, 2008, the trial court signed an order denying Wood’s motion to compel
arbitration.  Wood, GM Oil, and Moores filed this interlocutory appeal regarding the trial
court’s order denying the motion to compel arbitration.  

Wood, GM Oil, and Moores filed a motion requesting that we abate the appeal
to allow the trial court to clarify ambiguous language found in the order.  A reading of the order showed that it was
unclear whether the trial court had intended to deny only Wood’s right to
compel arbitration of Wade’s claims or whether the order was intended also to
preclude GM Oil and Moores from compelling
arbitration.  In this respect the order
provided, “[T]his Court has determined that [Wade’s] claims in this action
against the Defendants are not
subject to a valid and enforceable arbitration agreement and do not fall within
the scope of such arbitration agreement . . . .”  (Emphasis added.)  

We abated this appeal and
ordered the trial court to clarify, modify, or reconsider the order.  In our abatement order, we pointed out that
it was “unclear from the order whether the order was intended to apply only to
[Wade’s] claims against Wood or whether it was intended to apply to [] Wade’s
claims against all three defendants.”  

On October 12, 2009, the
trial court signed its “Order of Clarification and Reconsideration.”  The order provided “that this Court’s
order of August 7, 2008 intended to apply to Plaintiff Wade’s claims against
all three Defendants: Bill O. Wood, GM Oil Properties, Inc. and Gary Moores.”  The order
also stated, 

“[T]his Court has determined that Plaintiff Sheridan
Wade’s claims in this action against Defendants Bill O. Wood, GM Oil
Properties, Inc. and Gary Moores are not subject to a
valid and enforceable arbitration agreement and do not fall within the scope of
such arbitration agreement and hereby REAFFIRMS the denial of Defendant Wood’s
Motion to Compel Arbitration.”

 

Wood, Moores,
and GM Oil filed a petition for writ of mandamus in this Court, asserting that
the trial court erred when it “adjudicated their arbitration defenses” before
ruling on GM Oil’s and Moores’s special appearances.  See In
re GM Oil Props., Inc., No. 10–00001–CV, 2010 WL 2653279, *2 (Tex. App.—Houston [1st
Dist.] July 1, 2010, orig. proceeding.).  We
agreed and held that the trial court had abused its discretion when it
determined that Wade’s claims against GM Oil and Moores
were not subject to arbitration before it determined whether it had personal
jurisdiction over those defendants.  Id. at *3.  We ordered the trial court either (1) to
vacate its October
12, 2009 Order of Clarification and
Reconsideration or (2) to modify the order to limit its application to Wade’s
claims against Wood and to delete the order’s language stating that Wade’s
claims against GM Oil and Moores are not subject to,
or within the scope of, a valid arbitration clause.  Id.  

We also abated this appeal and
ordered that it be reinstated on the filing of a supplemental clerk’s record
containing (1) the trial court’s modified order denying Wood’s motion to compel
arbitration or, (2) in the event that the trial court vacated the October 12, 2009 order, an order replacing that order and
denying arbitration.  See id. at
*4.  

We reinstated the appeal
after receiving a supplemental clerk’s record containing an order from the
trial court denying Wood’s motion to compel arbitration.  The order, signed August 4, 2010, expressly
states that the trial court’s original order denying the arbitration request
applied only to Wade’s claims against Wood individually.  The order also provides,

[H]aving considered the
pertinent materials submitted by the parties, including Defendant Bill Wood’s
Motion to Compel Arbitration and Plaintiff Sheridan Wade’s Motion for Partial
Summary Judgment on the Issue or Arbitration, this Court has determined that
Plaintiff Sheridan Wade’s claims in this action against defendant Bill O. Wood
is not subject to a valid and enforceable arbitration agreement and does not
fall within the scope of such arbitration agreement . . . .

 

Wood challenges the trial court’s
denial of his motion to compel arbitration in this interlocutory appeal,
raising two issues.[3]  

Standard of Review

As a general proposition, we review
a trial court’s denial of a motion to compel arbitration under an
abuse-of-discretion standard.  See Schlumberger Tech. Corp. v. Baker Hughes
Inc., No. 01–11–00562–CV, 2011 WL 4925996, at *8 (Tex. App.—Houston [1st
Dist.] Oct. 13, 2011, no pet. h.); Okorafor v. Uncle Sam & Assocs., Inc.,
295 S.W.3d 27, 38 (Tex. App.—Houston
[1st Dist.] 2009, pet. denied).  Nevertheless,
whether an arbitration clause imposes a duty to arbitrate is a matter of
contract interpretation and, as such, is a question of law for this Court to
review de novo.  See BDO Seidman, L.L.P.
v. J.A. Green Dev. Corp., 327
S.W.3d 852, 854 (Tex. App.—Dallas 2010, no pet.) (citing Tex. Petrochemicals, L.P. v. ISP Water Mgmt.
Servs., L.L.C., 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no
pet.)); see also Schlumberger Tech. Corp.,
2011 WL 4925996, at *8 (citing Forest Oil
Corp. v. McAllen, 268 S.W.3d 51, 55 n.9 (Tex. 2008) (“When an appeal from a
denial of a motion to compel arbitration turns on a legal determination . . .
we apply a de novo standard.”). 
Significant to this appeal, we recognize that whether an enforceable
agreement to arbitrate exists is a legal question subject to de novo review.  Bates v. MTH Homes–Tex., L.P., 177 S.W.3d 419, 422 (Tex. App.—Houston [1st Dist.]
2005, no pet.).

Analysis

A.      Agreement to Arbitrate Wade’s Claims
Against Wood, Individually

Wood contends that Wade is subject
to the arbitration provision in GM Oil’s bylaws requiring, inter alia, a
shareholder to arbitrate any dispute relating to the corporation, including
torts and breach of contract claims, between a shareholder and a corporate
officer.  Wood points out that Wade was a
shareholder of GM Oil from August 31, 2005 until November 16, 2005 and that Wood
has been, at all relevant times, a corporate officer of GM Oil.  Wood also asserts that Wade’s claims against
him individually relate to the corporation, GM Oil, within the meaning of the
arbitration provision.  

          In response, Wade
points out that the trial court’s August 4, 2010 order expressly
indicates that the trial court denied Wood’s arbitration request only as it
relates to her claims against Wood in his individual capacity.  Wade asserts that her claims against Wood
individually do not comprise a dispute between a shareholder and a corporate
officer and are not covered by the arbitration provision in the bylaws.  In this regard, Wade directs us to the
following:

·      
As indicated in the factual allegations
underlying her claims, Wade does not bring this suit in her capacity as a
former GM Oil shareholder.

 

·      
Wade’s claims against Wood individually are not
asserted against him in his role as a corporate officer.

  

·      
Wade’s claims arise from her partnership
relationship with Wood; it does not arise from her former shareholder
relationship with GM Oil or its officers.

 

·      
Wade sues for breach of an oral partnership
agreement with Wood in which she claims he promised her 10 percent ownership in
GM Oil and for breach of the Stockholder’s Agreement in which Wood, signing in
his individual capacity, agreed to transfer 10 percent of his personal interest
in GM Oil to Wade.  She does not base her
claims on a breach of GM Oil’s bylaws or on a right asserted thereunder. 

 

          The
respective position of each party raises the following question: Did the
parties enter into an agreement to arbitrate Wade’s claims against Wood brought
by Wade in her individual capacity against Wood in his individual
capacity?  In evaluating a motion to
compel arbitration, a court must determine first whether a valid arbitration
agreement exists, and then whether the agreement encompasses the claims raised.
 See
In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006); In re Oakwood Mobile Homes, Inc., 987
S.W.2d 571, 573 (Tex. 1999).  It is a
foundational principle that a party cannot be compelled to arbitrate a dispute
when the party has not agreed to do so.[4]
 Rachal v. Reitz, 347
S.W.3d 305, 308 (Tex. App.—Dallas 2011, pet. filed); Bates, 177 S.W.3d at 422;
Trico Marine Servs., Inc. v. Stewart
& Stevenson Technical Servs., 73 S.W.3d 545,
548 (Tex. App.—Houston
[1st Dist.] 2002, no pet.).  Whether an
entity or person is a party to the arbitration agreement is included within the
broader issue of whether the parties agreed to arbitrate.  See Smith/Enron Cogeneration Ltd. P’ship,
Inc. v. Smith Cogeneration Int’l, Inc., 198 F.3d 88, 95 (2d Cir. 1999).

          The Supreme
Court of Texas has repeatedly expressed a strong presumption favoring arbitration;
however, the presumption arises only after the party seeking to compel
arbitration proves that a valid arbitration agreement exists.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).  In other words, the presumption favoring
arbitration does not go so far as to create an obligation to arbitrate where
none exists.  See Volt Info. Scis ., Inc. v. Bd. of Trs., 489
U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989) (stating “arbitration under the
[FAA] is a matter of consent, not coercion”); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 738 (Tex.
2005) (“Because arbitration is contractual in nature, the FAA generally does
not require parties to arbitrate when they have not agreed to do so.”).  “Although arbitration is encouraged, it is a
contractual matter and, in the absence of an agreement to arbitrate, a party
cannot be forced to forfeit the constitutional protections of the judicial
system and submit its dispute to arbitration.”  Jenkens & Gilchrist v. Riggs, 87 S.W.3d
198, 201 (Tex. App.—Dallas
2002, no pet.).  Thus, unless a
party has agreed to arbitrate, arbitration should not be compelled.  See Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994)
(orig. proceeding).

To support his position that Wade
agreed to arbitrate her claims against him individually, Wood relies on the
general corporate law precept that bylaws constitute a contract between a
corporation and its shareholders.  See, e.g., Overland Auto. Co.
v. Cleveland, 250 S.W. 453, 455 (Tex. Civ. App.—Dallas 1923, writ dism’d w.o.j.) (“The stockholders and the
corporation between themselves must abide by the articles of association and
the by-laws.”); Ainsworth v. Sw. Drug
Corp., 95 F.2d 172, 173 (5th Cir. 1938) (“[T]he charter and by-laws of a
corporation constitute a contract between the company and its shareholders.”).  Wood asserts that Wade is bound by the
arbitration provision in the bylaws because she accepted the GM Oil stock in
August 2005, thus becoming a stockholder, and then profited from the sale of
the stock in November 2005.  

When deciding whether the parties
agreed to arbitrate, courts should apply ordinary state law principles
regarding the formation of contracts.[5]
 First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.
Ct. 1920, 1924 (1995); J.M. Davidson,
128 S.W.3d at 227–28.  In
conducting our review, “This Court may not expand upon the terms of the
contract or tolerate a liberal interpretation of it by reading into it a
voluntary, consensual agreement to arbitrate when one otherwise does not exist.”  Bates,
177 S.W.3d at 422. 
“Although an arbitration agreement does not have to assume any
particular form, the language of the agreement must clearly indicate the intent
to arbitrate.”  Id.  

          With these
principles in mind, we turn to the arbitration provisions in GM Oil’s bylaws to
determine whether Wade agreed to arbitrate her personal claims against Wood in
his individual capacity.[6]
 Who is actually bound by an arbitration
agreement is a function of the intent of the parties, as expressed in the terms
of the agreement.  Bridas S.A.P.I.C. v. Gov’t of
Turkmenistan, 345 F.3d 347, 355 (5th Cir. 2003).  Here, the arbitration clause states, in
relevant part, that any dispute “between or among the parties and relating to
the Corporation” shall be resolved by arbitration.[7]  A subsection of the arbitration clause,
entitled “Covered Parties,” states that the duty to arbitrate extends “to any
Director, officer, employee, Shareholder, principal agent, trustee in
bankruptcy or otherwise, affiliate, subsidiary, third-party beneficiary, or
guarantor of a party making or defending a claim that would otherwise be
subject to this Section.”  

          When she
filed suit, Wade was not a shareholder of GM Oil, and therefore was not among
the “Covered Parties” at that time.[8]
 Arguably, when construed broadly, Wade’s
claims against Wood individually, “relate” to GM Oil.  Nonetheless, the arbitration clause by its own
terms, only binds, as relevant to this case, corporate officers and
shareholders regarding disputes “between or among” them.  In other words, the clause applies to a
dispute only when each party involved is either enforcing a right or being
subject to an obligation arising from his or her status as a corporate officer
or a shareholder.  The arbitration clause
does not purport to bind a former shareholder when, as here, she is suing in
her individual capacity on claims not derivative of or arising from her
shareholder status.  Cf. Blaustein v. Huete,
434 Fed. Appx. 304, 306 (5th Cir. 2010) (holding that defendant law firm
could not compel the plaintiff to arbitrate his individual claims, under an arbitration
agreement with the firm’s corporate client, when the plaintiff had signed the arbitration
agreement as a representative of the client corporation, not in his individual
capacity).  

          We conclude
that Wade did not agree to arbitrate the claims she asserts against Wood,
individually.[9]  Accordingly, we hold that Wade’s claims
against Wood, individually, are not subject to the arbitration provision found
in GM Oil’s bylaws.  

Alternative Theories to Compel Arbitration

          According to
principles of contract and agency law, arbitration agreements may bind non-parties
to the agreement under any of six theories: (1) incorporation by reference; (2)
assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third
party beneficiary.  See Kellogg Brown & Root, Inc., 166
S.W.3d at 739.

          In his
principal brief, Wood intimates that even if he is not a party in his individual capacity to the arbitration
agreement, he may nonetheless enforce the arbitration provision as “a third
party beneficiary of the bylaws’ arbitration clause,” “under general agency
principles,” and “under principles of [concerted misconduct] equitable
estoppel.”  However, Wood’s argument
supporting each of these theories presumes that Wade is a party to the
arbitration agreement in her individual capacity.  Wood does not address how these alternative
principles bind Wade to the agreement when, as discussed supra, the claims involved in this interlocutory appeal are brought
by Wade in her individual capacity as a non-party to the arbitration agreement.  With regard to these alternative theories,
Wood makes no substantive argument showing that Wade, as a non-party, may be
bound under principles of agency and equity.[10]  Thus, Wood’s alternative theories offered to
show why he, in his capacity as a non-party to the agreement, may compel
arbitration do not serve to show how Wade, in the context of this case, is
bound by the arbitration provisions in the bylaws.   

          We overrule
Wood’s two issues on appeal.




 

Conclusion

          We hold that
the trial court did not abuse its discretion in denying Wood’s motion to compel
arbitration with respect to Wade’s claims against Wood, individually.  We affirm the trial court’s August 4, 2010
order denying Wood’s motion to compel arbitration.  

 

 

                                                                      Laura
Carter Higley

                                                                      Justice


 

Panel consists of Justices
Keyes, Higley, and Massengale.

    

 











[1]
        The
initial interlocutory order denying arbitration was appealed by Bill O. Wood,
GM Oil Properties, Inc., and Gary Moores.  As explained infra, that order has been modified by the August 4, 2010 order that is currently the subject of this
interlocutory appeal.  See Tex.
R. App. P. 27.3. (“After an order or judgment in a civil case has been
appealed, if the trial court modifies the order or judgment, or if the trial
court vacates the order or judgment and replaces it with another appealable
order or judgment, the appellate court must treat the appeal as from the
subsequent order or judgment and may treat actions relating to the appeal of
the first order or judgment as relating to the appeal of the subsequent order
or judgment.”).  The current order
applies only to Wood, individually.   





[2]         These allegations are found in Wade’s
seventh amended petition, which was the live pleading at the time the trial
court denied Wood’s motion to compel arbitration, the subject of this
appeal.  





[3]         We have jurisdiction over Wood’s
interlocutory appeal of the trial court’s August 4, 2010 order denying his
motion to compel arbitration.  Wood
sought to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2008) (“FAA”), and
the Texas General Arbitration Act, Tex.
Civ. Prac. & Rem. Code Ann. §§ 171.001–.098
(Vernon 2011) (“TAA”).  An appeal can be
taken from either an interlocutory order denying a motion to compel arbitration
under the FAA, see TEX. CIV. PRAC. & REM. CODE ANN. §
51.016 (Vernon Supp. 2011), or an order denying a motion to compel arbitration
under the TAA, Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1). 

 

The FAA generally governs
arbitration provisions in contracts involving interstate commerce.  See
9 U.S.C. § 2; see also In re L & L Kempwood Assocs., L.P., 9 S.W.3d 125, 127 (Tex. 1999).  Parties may also expressly agree to arbitrate
under the FAA.  The arbitration provision
in GM Oil’s bylaws indicates, “Federal substantive and procedural laws relating
to arbitration shall govern issues of arbitrability,”
thus implicating the Federal Arbitration Act. 
See In re Kellogg Brown & Root,
80 S.W.3d 611, 617 (Tex. App.—Houston
[1st Dist.] 2002, orig. proceeding) (concluding that parties are not required
to establish that transaction at issue involves or affects interstate commerce when
parties agree to arbitrate under FAA).  In any event, the TAA and the FAA may both apply
to an agreement, absent the parties’ choice of one or the other.  L &
L Kempwood Assocs., L.P., 9
S.W.3d at 127–128.  The FAA may
preempt the TAA in certain cases.  See In re D. Wilson Constr. Co., 196
S.W.3d 774, 780 (Tex. 2006); see also Nafta Traders, Inc. v. Quinn, 339 S.W.3d 84, 97–98
(Tex. 2011).  No distinct preemption
argument is made here.  A party asserting
that the FAA preempts the TAA bears the burden of proof on that issue.  See Ellis
v. Schlimmer, 337 S.W.3d 860,
862 (Tex. 2011).  The FAA preempts
the TAA only when the TAA or other state law would not allow enforcement of an
arbitration agreement that the FAA would enforce.  Id. (citing D. Wilson Constr.
Co., 196 S.W.3d at 779–80).
 Otherwise, appellate review may be
available under both the TAA and the FAA so long as the TAA is not preempted.  Id. (citing D. Wilson Constr.
Co., 196 S.W.3d at 780). 
Here, it is not apparent or argued that the TAA or other state law would
not allow enforcement of the arbitration clause in GM Oil’s bylaws.  





[4]         Under both the TAA and the FAA, a party
seeking to compel arbitration has the initial burden to establish the
arbitration agreement’s existence and to show that the claims asserted fall
within the agreement’s scope.  Kellogg Brown & Root, 80 S.W.3d at 615.  





[5]         Courts also apply the rules governing contract
interpretation when construing corporate bylaws.  In re
Aguilar, 344 S.W.3d 41, 49 (Tex. App.—El Paso 2011, orig. proceeding).  





[6]         The issue of whether Wade, in her
capacity as GM Oil shareholder, adequately assented to the arbitration
agreement found in the bylaws is not directly raised or briefed by the parties
in this interlocutory appeal.  As
mentioned, Wood asserts that Wade, by virtue of her shareholder status, is
subject to the arbitration provisions in the bylaws.  In any event, as discussed infra, whether Wade agreed, as a
shareholder, to arbitrate disputes relating to the corporation is not outcome
determinative in this interlocutory appeal. 
Thus, we do not determine the issue of whether a shareholder can be held
to an arbitration provision found in corporate bylaws simply by virtue of his
or her shareholder status.  We note that
the Third Circuit Court of Appeals has held, as a matter of first impression
under Pennsylvania law, that a shareholder of a law firm could not be compelled
to arbitrate claims against the firm pursuant to the firm’s corporate bylaws to
which she did not explicitly assent.  Kirleis v. Dickie,
McCamey & Chilcote, P.C.,
560 F.3d 156, 163 (3d Cir. 2009).

 





[7]         As an aside, GM Oil’s bylaws require
that a dispute must first be mediated before it may be arbitrated. 

 





[8]         Although we note that Wade was not a
shareholder at the time she filed suit, we do not suggest by this observation,
that had she been a shareholder at the time she filed suit, her claims against
Wood, individually, would have been covered by the arbitration clause.  Nor do we suggest that a former shareholder
can never sue a corporation or its officers. 
A survey of case authority reveals cases in which former shareholders
have sued corporations or corporate officers. 
See, e.g., Koch v. Koch Indus.,
Inc., 203 F.3d 1202, 1209–10
(10th Cir. 2000) (involving suit by former shareholders against corporation and
its officers and directors, alleging claims of securities fraud, common law
fraud, breach of fiduciary duty, and breach of express warranty arising out of
buyout of shareholders’ interests); Dowling
v. Narragansett Capital Corp., 735 F. Supp. 1105, 1110–12 (D.R.I. 1990)
(involving suit by former shareholders against company’s officers, directors,
controlling shareholders, and investment banking firm, alleging violations of
Securities Exchange Act of 1934 and Investment Company Act, fraud, and
negligent misrepresentation in connection with sale of company’s assets).  We point to the fact that Wade was not a
shareholder at the time that she filed suit because it serves to illustrate
that she is not suing on any right or remedy she gained by virtue of her
shareholder status.   





[9]         In this interlocutory appeal, the trial
court’s order pertains only to Wade’s claims against Wood, individually, and
determines those claims are not subject to arbitration.  Our decision is limited to the subject matter
of that order.  Thus, we express no
opinion regarding whether Wade’s claims against Wood in his representative
capacity, her claims against GM Oil, or her claims against Moores
are subject to the arbitration provision. 






[10]        In footnote 120 of his brief, Wood
asserts that Wade is obligated to arbitrate under the doctrine of direct
benefits estoppel.  See Kellogg Brown & Root, Inc., 166 S.W.3d at 741 (concluding that
under direct benefits estoppel, a second-tier subcontractor suing a general
contractor is bound by an arbitration provision in the contract between the general
contractor and the first-tier subcontractor only when he “seeks, through the
claim, to derive a direct benefit from the contract” containing the provision);
In re Weekley
Homes, L.P., 180 S.W.3d 127, 132–33 (Tex. 2005) (holding that, under direct
benefits estoppel, a nonsignatory to a contract
containing an arbitration provision may be bound by the provision if the nonsignatory sought or obtained direct benefits from the
contract during its performance).  In
short, this doctrine applies to bind a party to an arbitration clause found in
a contract to which the party is not a signatory, but from which he or she seeks
or has sought a direct benefit.  Wood
asserts that Wade obtained a benefit under GM Oil’s bylaws when she sold her GM
Oil stock for a profit.  Generally, bylaws
are “the rules and regulations or private laws enacted by the corporation to
regulate, govern and control its own actions, affairs
and concerns and its shareholders or members and its directors and officers
with relation to each other and among themselves in their relation to the
corporation.”  8 William Meade Fletcher, Fletcher Cyclopedia of the Law Of Private
Corporations § 4166; see also
Little Canada Charity Bingo Hall Ass’n v. Movers
Warehouse, Inc., 498 N.W.2d 22, 24 (Minn. Ct. App. 1993) (stating that “the
purpose of a by-law is to establish rules for the internal government of the
corporation”).  Wood does not explain how
Wade’s profit from her stock sale was a direct “benefit” of GM Oil’s
bylaws.  The doctrine of direct benefits
estoppel does not apply if the claimed benefit is “indirect.”  Weekley Homes, 180 S.W.3d at 134.  Nor
does it apply if the claim merely “relates” to the contract.  Kellogg
Brown & Root, 166 S.W.3d at 741.  Here, Wood does not specify under which bylaw
provisions Wade directly benefited nor did he provide a copy of the bylaws,
besides the arbitration and general definitional provisions.  Wood has not shown that Wade is obligated to
arbitrate her claims against him individually under the doctrine of direct
benefits estoppel.