

# NUMBER 13-16-00247-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VOSS ENGINEERING, INC.
AND RONALD A. VOSS,                                          Appellants,

v.

MICHELLE BAUER
AND JAVIER ALONSO,                                          Appellees.

### On appeal from the 94th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

This is an interlocutory appeal challenging the trial court's denial of a motion to compel arbitration filed by appellants, Voss Engineering, Inc. and Ronald A. Voss. Appellees, Michelle Bauer and Javier Alonso, sued appellants for breach of contract, negligence, malpractice, deceptive trade practices, and negligent misrepresentation. By

four issues, appellants contend that the trial court improperly denied their motion to compel arbitration. We affirm.[1]

## I. Standard of Review

We apply an abuse of discretion standard to the trial court's denial of appellants' motions to compel arbitration. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Id.* If the ruling under review depends on the resolution of underlying facts, we must defer to the trial court on its resolution of those facts and any credibility determinations that may have affected those resolutions. *Id.* Furthermore, we may not substitute our judgment for the trial court on those matters. *Id.* However, we must apply a de novo standard of review to legal conclusions because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Id.*

Whether a valid arbitration agreement exists is a question of law and is therefore reviewed de novo. *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex. App.—Houston [14th Dist.] 1998, pet. dism'd w.o.j.). The party seeking arbitration has the initial burden to prove, and the trial court must initially decide whether there is a valid arbitration agreement, and if so whether the claims fall within the scope of the arbitration agreement. *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (combined appeal & orig.

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

proceeding). There is a strong presumption favoring arbitration; however, that presumption does not apply to the initial determination of whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Arbitration agreements are interpreted under traditional contract principles. *Id.*

Generally, parties must sign arbitration agreements before being bound by them. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *see Grigson v. Creative Artists Agency*, L.L.C., 210 F.3d 524, 528 (5th Cir. 2000) (noting that "arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory"). However, as set out by the Texas Supreme Court in *G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, non-signatories may be permitted to enforce an arbitration agreement under limited circumstances including, among other things, equitable estoppel. 458 S.W.3d 502, 524 (Tex. 2015) (citing and quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005)).

## II.    EQUITABLE ESTOPPEL

It is undisputed that appellants were not parties to the general contract containing an arbitration clause. Nonetheless, by their first issue, appellants contend that they are entitled to compel arbitration pursuant to the doctrine of equitable estoppel, which in limited circumstances allows non-parties to compel arbitration despite not signing the contract containing the arbitration clause. *See id.*

### A.    Applicable Law

Generally, "an arbitration clause cannot be invoked by a non-party to the arbitration contract." *Id.* (citing *Grigson*, 210 F.3d at 532) (internal quotations omitted). And although the "policy favoring arbitration is strong . . . it alone cannot authorize a non-party to invoke arbitration." *Id.* Under the doctrine of equitable estoppel, "a litigant who sues based on

3

a contract subjects him or herself to the contract's terms . . . including the Arbitration Addendum." *Id.* at 527. "This equitable principle applies when a claimant seeks 'direct benefits' under the contract *that contains the arbitration agreement.*" *Id.* (emphasis added). However, the benefit must stem directly from the contract and may not merely relate to the contract which contains an arbitration agreement. *Id.* Equitable estoppel applies if the plaintiff's claim depends on the existence of the contract meaning that "[t]he alleged liability must 'arise[] solely from the contract or must be determined by reference to it.'" *Id.* at 528. Even if a claim refers to or relates to the contract, equitable estoppel does not apply "'when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' rather than from the contract." *Id.*

## B. Analysis

Here, the general contract between Homes by Connie Graygor, Inc. (the Builder) and appellees provided that the Builder agreed to construct improvements to appellees' home. The general contract provided that the improvements would be constructed by the Builder and that appellees agreed to pay for such services. The general contract states that appellees are "advised that the Builder may have contracted with one or more independent professional architects, engineers, surveyors, designers, or other professional third parties (Builder's Professionals) to perform services and/or prepare certain documents or reports for completion of the Construction Documents and/or use in constructing the Improvements." Finally, the general contract contains an agreement that any claims by appellees against the Builder will be resolved in arbitration.

In *G.T. Leach Builders*, the Texas Supreme Court held that equitable estoppel could not be invoked by non-signatory subcontractors although the general contract

4

formed the genesis of the plaintiff's claims against them. 458 S.W.3d at 528. The court reasoned that the plaintiff had not sued these parties for breach of obligations under the general contract, and instead, the plaintiff alleged that each of the subcontractors had "breached duties that they each contractually agreed to perform and [each] failed to perform them as a reasonable professional would have performed them." *Id.* The record showed that the subcontractor engineers and insurance brokers had contracts directly with the plaintiff wherein they agreed to perform certain duties, which were not part of the general contract. *Id.* at 529. The court noted that the plaintiff's claims of breach of contract against the other subcontractors were based on obligations that the subcontractors had accepted in separate contracts with the builder. *Id.* The court recognized that the plaintiff's claims would not have arisen but for the existence of the general contract but concluded that is not enough to establish equitable estoppel. *Id.* The court held that in its suit against the non-signatory subcontractors, the plaintiff had not sought a direct benefit from the general contract and had instead sought direct benefits under the other above-mentioned contracts. *Id.*

Appellees sued appellants for breach of contract, negligence, malpractice, deceptive trade practices, and negligent misrepresentation. Appellants were subcontractors hired by the Builder, and as previously stated were not signatories to the general contract. To prevail, appellants had the burden to show that appellees' claims could not stand independently from the general contract with the Builder, which contains the arbitration clause. In other words, appellees, as signatories to the general contract, must have relied on the terms of the general contract in asserting its claims against the non-signatory appellants. *See Positive Software Sols., Inc. v. New Century Mortg. Grp.,* 259 F.Supp.2d 531, 539 (N.D. Tex. 2003). As to the breach of contract claim, the general

5

contract does not specify any obligations required to be performed by appellants.  The general contract imposes obligations to be performed by the Builder, and it states that the Builder would hire subcontractors, such as engineers, to perform other required services.  In their pleading appellees alleged that the Builder "retained the services of [appellants] to perform engineering services for [appellees'] construction project, and part of the construction project was the design of the retaining walls and their components."  In their pleading, appellees stated that they were third-party beneficiaries of the contract between the Builder and appellants and that appellants breached that contract resulting in a failure to provide adequate engineering services with respect to a sea wall and/or retaining wall.

Appellees also sued appellants for negligence and professional malpractice for allegedly failing to use reasonable care in the design of the retaining walls, the anchors, other components, and other specifications, as well as failing to use reasonable care in developing the plans that incorporated the designs.  Appellees also sued appellants under the Texas Deceptive Trade Practices Act (DTPA) claiming that appellants were "guilty of false, misleading, and/or deceptive acts against" appellees and for negligent misrepresentation claiming that appellants made representations that they would provide engineering services of a particular quality and supplied no plans, supplied false information, "did not exercise reasonable care or competence in obtaining or communicating the information that they were not plans," and appellees justifiably relied on the representations suffering a loss.

Appellees' claims do not stem directly from the general contract.  Instead, as stated above, appellees' pleading shows that they are not suing appellants for a breach of the contract between appellants and the Builder.  Appellees are not relying on a breach of the general contract by appellants, and appellees' breach of contract claim does not arise

6

solely from the general contract. As held in *G.T. Leach Builders*, such a claim is not dependent on the general contract requiring the trial court to compel arbitration. *See* 458 S.W.3d at 528. Regarding appellees' tort and DTPA claims, appellants' liability, if any, arises from general obligations imposed by common law and statute, and the general contract is silent regarding these obligations.[2] *See id.* Therefore, in making their claims against appellants, appellees have not sought a direct benefit from the general contract and, instead, are relying on the subcontracts and statutory and common law. Accordingly, we conclude the trial court did not abuse its discretion when it denied appellants' motion to compel arbitration. *See id.*; *Okorafor*, 295 S.W.3d at 38. We overrule appellants' first issue.

## III. CONCLUSION

We affirm the trial court's judgment.[3]

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
21st day of June, 2018.

---

[2] We note that appellants have not specifically argued or explained how the substance of appellees' tort and DTPA claims arise from the general contract and not from general obligations imposed by state law. *See* TEX. R. APP. P. 38.1(i). In addition, in their motion to compel arbitration, appellants made no mention of the tort and DTPA claims and generally stated that all claims were subject to arbitration based on an equitable estoppel theory.

[3] Having concluded that the appellants could not compel arbitration under the general contract, we need not address appellants' other issues as they are not dispositive. *See id.* 47.1. Those issues include that appellees' claims against appellants "fall within the scope of the arbitration agreement," that appellants "are not precluded from compelling arbitration because of a condition precedent (mediation)," and appellants did not waive their right to compel arbitration.