# Supreme Court of Texas

No. 25-0297

Champion Food Service, Inc. and Champion Food Service 2, Inc.,

*Petitioners,*

v.

ProAlamo Foods, L.L.C. and ProCoastal, L.L.C.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued March 4, 2026**

JUSTICE LEHRMANN delivered the opinion of the Court.

CHIEF JUSTICE BLACKLOCK filed a concurring opinion, in which Justice Sullivan joined.

Quantum meruit is an equitable remedy based on the principle of unjust enrichment. The right to recover in quantum meruit does not arise from a contract; rather, it arises by law under some circumstances when the parties have neglected to form an express agreement. Accordingly, recovery in quantum meruit is generally not available when the parties have a valid contract.

In this case, a meat supplier sued a customer for breach of contract and quantum meruit for failure to pay the full amount due on several shipments of meat products. On the contract claim, the jury was not asked whether agreements to pay for the meat products existed; it was asked only whether the customer "fail[ed] to comply with" those agreements. The jury answered no, but it also found that the supplier was entitled to recover in quantum meruit and awarded damages on that claim. The trial court rendered judgment on that portion of the jury's verdict. The court also awarded the supplier its requested attorney's fees, disregarding the jury's finding that a reasonable fee for the attorneys' services was $0.

We hold that the supplier's recovery in quantum meruit is barred as a matter of law because the provision of meat was covered by express agreements between the parties. In light of that holding, the supplier has not prevailed on a claim for which attorney's fees are recoverable, and the trial court erred in awarding such fees. We reverse the court of appeals' judgment in part and render a take-nothing judgment.

## I. Background

Respondents ProAlamo Foods, L.L.C. and ProCoastal, L.L.C. (Sellers) are commercial meat suppliers. They deliver frozen, sealed meat products to commercial distributors like petitioners Champion Food Service, Inc. and Champion Food Service 2, Inc. (collectively, Buyer). Buyer, in turn, supplies those products to restaurants and grocery stores. From July to November 2018, Buyer purchased frozen meat from Sellers. Buyer's owner, Pasadena Ayala, placed the orders by phone, and deliveries were accompanied by invoices.

2

It is undisputed that Buyer failed to pay some of the invoices, although the parties disagree on the reason. Buyer asserts that some of the meat supplied by Sellers was spoiled and that it received complaints from customers regarding the quality of the meat.[1] According to Ayala, because the meat arrived frozen and sealed, it was also shipped to customers that way. As a result, Ayala did not know any of the meat was spoiled until customers complained. On the other hand, Sellers maintain that Buyer fell behind on payments and created the spoiled-meat justification months after accepting the shipments to avoid its obligation to pay. According to Sellers, there is no proof that any spoiled meat came from them.

Sellers sued Buyer for breach of contract and, alternatively, quantum meruit, alleging that Buyer owed and failed to pay $73,052.95 for the meat products Sellers supplied.[2] Buyer counterclaimed for breach of contract based on Sellers' alleged provision of spoiled meat,[3] seeking lost profits as damages.

---

[1] Ayala testified that, at the time of trial, Buyer still had 102 boxes of meat from Sellers that either Buyer's customers had returned or Buyer was unable to sell.

[2] Based on the evidence, Buyer received twenty shipments of meat from Sellers—the first on July 26, 2018, and the last on November 12, 2018—each accompanied by a separate invoice. According to the breakdown of Buyer's payments that Sellers presented to the jury, Buyer ultimately paid some of the invoices in full, made partial payments on others, and made a single $10,000 payment with respect to the final invoices, resulting in an overall shortage of $73,052.95.

[3] Buyer brought additional counterclaims on which the trial court granted Sellers a directed verdict. Those claims are not at issue on appeal.

At the ensuing jury trial, much of the evidence focused on how much Buyer paid Sellers relative to the invoices accompanying the meat shipments as well as whether, and how much of, the meat supplied to Buyer was spoiled. Question No. 1 of the jury charge asked: "Did [Buyer] fail to comply with the agreements to pay [Sellers] for the meat products provided?" The jury answered no. Question No. 3, on quantum meruit, asked: "Did [Sellers] perform compensable work for [Buyer] for which they were not compensated?"[4] The jury answered yes. As to damages, the jury found that the reasonable value of the meat products for which Buyer did not pay was $46,396.58.[5] On attorney's fees, the jury found that a reasonable fee for the necessary services of Sellers' attorneys was $0. Finally, on Buyer's counterclaim for breach of contract, the jury found that Sellers "fail[ed] to comply with the agreement" but awarded Buyer $0 in lost-profit damages.

Both parties filed motions for judgment notwithstanding the verdict (JNOV). Sellers argued the evidence conclusively established that Buyer breached its agreements with them and that they were entitled to recover $73,052.95 in damages and $219,674 in attorney's

---

[4] The charge instructed that Sellers "performed compensable work if they furnished valuable materials—in the form of meat products—to [Buyer]; [Buyer] accepted, used, and benefited from the materials; and, under the circumstances, [Buyer] was reasonably notified that [Sellers] expected to be compensated for the materials."

[5] We are unable to discern from the record exactly how the jury arrived at this number. At one point, Ayala testified that he estimated the dollar value of the total amount of "bad" product to be approximately $30,000, significantly less than Sellers claimed they were owed. Perhaps the jury's finding reflects an effort to assign a dollar value to a quantity of meat that Buyer neither paid for nor asserted was spoiled.

4

fees—the full amounts they had asked the jury to award. Buyer contended that the quantum meruit question should not have been submitted to the jury because the trial court decided as a matter of law that a valid and enforceable agreement existed, and that it was entitled to judgment awarding it $100,000 in lost-profit damages. The trial court denied Buyer's motion and granted Sellers' motion in part. The court rendered a final judgment in favor of Sellers on their quantum meruit claim, awarding them $46,396.58 in actual damages—the amount found by the jury—and $219,674 in attorney's fees plus conditional appellate fees.

The court of appeals affirmed the judgment in relevant part. 716 S.W.3d 881, 914 (Tex. App.—San Antonio 2024). The court of appeals held that the trial court did not err in charging the jury on the quantum meruit claim or in rendering judgment in favor of Sellers on that claim. *Id*. at 896. On attorney's fees, the court of appeals held that the trial court did not err in awarding Sellers the full amount of fees sought notwithstanding the jury's finding that a reasonable fee was $0.[6] *Id*. at 904.

We granted Buyer's petition for review.

## II. Discussion

### A. Quantum Meruit

"Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and

---

[6] The court of appeals reversed a separate order in which the trial court awarded Sellers additional attorney's fees for work related to the JNOV. 716 S.W.3d at 906. That portion of the court's judgment is not before us.

knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). The purpose of quantum meruit "is to prevent a party from being 'unjustly enriched.'" *Id.* (quoting *Truly v. Austin*, 74 S.W.2d 934, 938 (Tex. 1988)). To recover in quantum meruit, a party must prove the following elements: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted, used, and enjoyed by the person sought to be charged; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.[7] *Id.* at 732–33. As a quasi-contractual theory, quantum meruit "is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 1–12 (3d ed. 1987)).

Generally, recovery in quantum meruit is barred when a valid contract covers the services or materials furnished. *Kellogg*, 166 S.W.3d at 740. In that circumstance, the injury is covered by the contract, so there is no need to impose an independent legal obligation. *Id.*; *see also Woodward v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) ("Recovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract covering the

---

[7] The instruction submitted to the jury on the quantum meruit claim substantially tracked this language.

subject matter, there can be no implied contract.").[8]  "However, the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of work performed and accepted which is *not* covered by an express contract."  *Hill*, 544 S.W.3d at 737 (emphasis added).  Accordingly, a party may seek alternative relief under both a contract theory and a quantum meruit theory.  *Kellogg*, 166 S.W.3d at 740.  Whether a contract covers the services or materials provided is a legal question, which we review de novo.  *Hill*, 544 S.W.3d at 737.  "When the evidence shows that no contract covers the service at issue, *then* the question of whether a party may recover in quantum meruit is for the trier of fact."  *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Buyer argues that the transactions here were covered by valid, express agreements between itself and Sellers.  According to Buyer, Sellers conceded that contracts existed and did not plead or argue in the trial court that any of the meat products were provided outside the scope of those contracts.  Instead, Sellers alleged in their live pleading that the parties "had valid agreements whereby [Sellers] provided products and [Buyer] would pay according to the invoices submitted."  Thus, Buyer concludes, Sellers cannot recover on a quantum meruit theory,

---

[8] We have recognized exceptions to the express-contract bar, but none are at issue here. *See, e.g.*, *Truly*, 744 S.W.2d at 936 (explaining that "recovery in quantum meruit is allowed when a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract").

and the trial court should have granted its JNOV motion and should not have submitted the quantum meruit question to the jury.

In response, Sellers argue that even if agreements covered the provision of some of the meat, Sellers may still recover in quantum meruit for meat that was not covered by express agreements. In their view, the record demonstrates only that the parties had oral conversations and did not settle on specific terms. Moreover, when Sellers made deliveries to Buyer, Ayala often changed the terms by making handwritten notes on the invoices. Therefore, Sellers argue, Buyer accepted goods outside of an express agreement and refused to pay, so Sellers may recover in quantum meruit.

The denial of a motion for judgment notwithstanding the verdict is reviewed as a legal-sufficiency challenge. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). A JNOV is properly granted "only when the law does not allow reasonable jurors to decide otherwise." *Id.* Put another way, a JNOV is proper when the evidence conclusively proves that one party is entitled to prevail as a matter of law or "when the record demonstrates that a theory of liability found by the jury is barred as a matter of law." *Hou. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In conducting our review, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827.

Here, the evidence and pleadings conclusively establish the existence of express contracts that covered Sellers' provision of meat to

8

Buyer. Indeed, that was Sellers' emphatic position throughout the trial. At the charge conference, Buyer objected to the liability questions for both breach of contract and quantum meruit based on the lack of a predicate question asking whether the parties had an agreement. In response, counsel for Sellers told the trial court, "[T]here is no question here that there is an agreement. . . . There's ample evidence that there's an agreement. It's not something that's in question." The trial court submitted both questions without a predicate question regarding the existence or terms of any agreement. In doing so, the trial court, at Sellers' urging, submitted a jury question that assumed the existence of "agreements to pay [Sellers] for the meat products provided" and asked only whether Buyer "fail[ed] to comply with th[os]e agreements."[9] Similarly, counsel for Sellers asserted in closing argument that an agreement undisputedly covered the transactions. In discussing the breach-of-contract question in the jury charge, counsel stated, "[I]t's not in dispute that the answer is yes. There was an agreement between [Sellers] and [Buyer], we would sell him meat products, he would pay for them. He didn't pay for them."

The trial evidence supported that position. Sellers introduced the invoices *with* handwritten changes as evidence of the agreements they claimed were breached. Sellers' general manager of distribution testified by deposition that Ayala would call her and discuss pricing,

---

[9] The trial court did predicate the quantum meruit question on a "no" answer to the question of whether Buyer failed to comply with the agreements. But quantum meruit is not an alternative theory to recover from a party who did not breach a contract; rather, it is an equitable remedy when no contract existed at all. *Kellogg*, 166 S.W.3d at 740.

9

date of delivery, and quantity of meat products for the orders. Based on those conversations, Sellers would deliver meat to Buyer with invoices. Those oral agreements with written invoices qualify as contracts. *See* TEX. BUS. & COM. CODE § 2.204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.").[10]

Sellers claim the handwritten changes to some of the invoices constitute evidence that a portion of the meat was delivered outside the scope of any agreement. We disagree. First, Sellers' own witnesses explained some of the changes. For example, Sellers' operations warehouse manager testified that some of the changes were credits given when an invoice did not accurately reflect the amount of meat delivered in a particular shipment:

> Q: All right. So with regard to this product, which is Champion 039, . . . do you know whether [Sellers] gave [Buyer] any credit with respect to this invoice involving outside skirt, fajita meat?
>
> A: Yeah, I'm sure we did. I mean, I don't have that information in front of me, but I'm sure we did.
>
> Q: Do you know how much?
>
> A: If they didn't receive the skirts, it would have been a credit of $1400.63.

Similarly, Sellers' general manager approved a discount on invoice #13623:

> Q: [T]hese are the same invoices that are Champion 14, but there are some differences; aren't there?

---

[10] Neither party has alleged or argued that the agreements are unenforceable under the statute of frauds.

10

A: Yes, sir.

Q: Can you identify just some of those differences.

A: Sure. When you look at [invoice] ProAlamo 195, that one indicates there that -- you have, "okay, MC," which I believe to be [Sellers' general manager] meaning that she approved that price.

Specifically, on that invoice, Sellers' general manager approved a discount totaling $1625.66. On another invoice, the same notation indicated an approved discount of $465.

Ayala testified that he revised other invoices to reflect credits for the portion of meat that turned out to be spoiled. Sellers, of course, disputed that they authorized such credits or that Buyer was entitled to them. While that testimony may reflect a disagreement about how much was owed and whether Buyer breached by refusing to pay, it does not indicate the absence of an agreement in the first instance. Nor does it indicate that Sellers delivered meat to Buyer outside the scope of any orders Buyer placed. Instead, Sellers argued at trial that the invoices, some with the handwritten changes, constituted the very agreements that Buyer breached.

Imagine a customer calling a bakery and ordering a birthday cake for $75. The bakery makes the cake, delivers it to the customer, and presents an invoice for $75. However, the customer, dissatisfied with the cake, crosses out the price and writes in $50. The bakery sues the customer for the remaining $25. It would make no sense for the bakery to pursue a quantum meruit claim on the theory that no contract existed because the customer "changed" the terms of the agreement on delivery. The customer simply did not hold up their end of the bargain, and the

11

law provides a cause of action to resolve that dispute—breach of contract. But the bakery may not recover under an implied-contract theory because the parties had an express agreement covering the provision of the cake.

The same is true here: The notations Buyer made on the invoices do not negate the existing agreements. At trial, Sellers did not argue or offer evidence that they delivered meat not reflected on the invoices, which were presented as evidence of the "agreements to pay [Sellers] for the meat products provided." Instead, the parties disagreed about the reason Buyer did not pay the full amount reflected on the invoices. Buyer alleged that Sellers had delivered spoiled meat, while Sellers alleged that Buyer simply got behind on payments and had no evidence to support its spoiled-meat theory. That dispute over an alleged failure to pay the full, agreed-upon amount sounds in breach of contract but not quantum meruit because there was a valid, enforceable agreement. *See Kellogg*, 166 S.W.3d at 740.

We emphasize that when the existence or scope of a contract is in dispute, the jury should be asked whether a contract exists. Ordinarily, when that issue arises in the context of a quantum meruit claim, the burden is on the party seeking to avoid liability to ensure that the question is in the charge—and to preserve error if it is not—because the existence of a contract is an affirmative defense to quantum meruit. *See Fortune Prod. Co.*, 52 S.W.3d at 685 ("When the existence of or the terms of a contract are in doubt, and there is a claim for unjust enrichment, it is incumbent on the party disputing that claim to secure findings from the trial court that an express contract exists that covers the subject

12

matter of the dispute."). But when a party asserts both a contract claim and a quantum meruit claim, the charge assumes the existence of a contract, and the evidence conclusively supports that assumption, recovery in quantum meruit is not available for claims covered by the contract.

In short, the parties had agreements for Sellers to supply a certain amount of meat products to Buyer for a certain price. Moreover, nothing in the record indicates that any products were provided outside the scope of those agreements. Therefore, Sellers were barred from recovering in quantum meruit. *See Kellogg*, 166 S.W.3d at 740. Accordingly, we hold that the trial court erred in denying Buyer's JNOV motion with respect to the quantum meruit claim.[11]

## B. Attorney's Fees

In its second issue, Buyer argues that the trial court erred in awarding Sellers attorney's fees in contravention of the jury's finding that a reasonable fee for Sellers' attorneys' services was $0. Buyer argues that the reasonableness of the fees was a fact question for the jury to decide and the trial court should not have disturbed that decision.

Sellers' entitlement to attorney's fees is premised on Civil Practice and Remedies Code Section 38.001, which provides in relevant part that "[a] person may recover reasonable attorney's fees . . . in

---

[11] Buyer also argues that the trial court committed charge error by refusing to submit a predicate question regarding the existence or scope of a contract. Sellers respond that Buyer failed to preserve this issue because it did not submit such a predicate question. *See Fortune Prod. Co.*, 52 S.W.3d at 685. In light of our holding that the trial court should have granted Buyer's JNOV motion, we need not reach the charge-error issue.

13

addition to the amount of a valid claim and costs, if the claim is for . . . furnished material." TEX. CIV. PRAC. & REM. CODE § 38.001(b)(3). To recover fees, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."[12] *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Because we hold that Sellers cannot recover under quantum meruit as a matter of law, they may not recover attorney's fees. We therefore need not address Buyer's argument that the trial court erred in disregarding the jury's $0 fee award.[13]

## III. Conclusion

Sellers cannot recover in quantum meruit because the provision of meat products was covered by agreements between the parties. And because their quantum meruit claim is barred, Sellers also may not

---

[12] We have held that while a trial court has discretion to determine the amount of attorney's fees to be awarded, it lacks discretion to deny fees when they are proper under Section 38.001 and evidence thereof is presented. *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015); *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009).

[13] Our conclusion that we need not address this issue should not be read as approval of the court of appeals' analysis of it. Assuming the jury's finding of $0 in reasonable attorney's fees is unsupported by legally sufficient evidence and therefore improper, we are troubled by the trial court's rendition of judgment as a matter of law for the full amount of requested fees. *See Smith*, 296 S.W.3d at 548–49 (holding that, where the jury awarded the plaintiff approximately one-third of the contract damages sought and no attorney's fees, the court of appeals correctly determined that no evidence supported the jury's refusal to award any fees but erred in awarding the full amount requested as a matter of law given the amount involved and results obtained); *see also Wang v. Whittenburg*, ___ S.W.3d ___, 2026 WL 1355074, at *6 (Tex. May 15, 2026) (remanding for the factfinder to reconsider attorney's fees after the results obtained changed on appeal).

recover attorney's fees.  We reverse the portion of the court of appeals' judgment affirming the trial court's judgment with respect to quantum meruit and attorney's fees, and we render a take-nothing judgment for Buyer.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 19, 2026