Opinion issued October 1, 2020



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00943-CV

———————————

**TAYLOR MORRISON OF TEXAS, INC. AND TAYLOR WOODROW COMMUNITIES-LEAGUE CITY, LTD., Appellants**

**V.**

**ERIN SKUFCA AS NEXT OF FRIEND OF KSX AND KSXX, MINOR CHILDREN, Appellees**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 19-CV-1574**

---

## MEMORANDUM OPINION

Jack Richard Skufca, Jr. and Erin Skufca, individually and as next friend of

the couple's two minor children, KSX and KSXX, sued Taylor Morrison of Texas,

Inc. and Taylor Woodrow Communities-League City, Ltd. (collectively, "Taylor

Woodrow"),[1] alleging that the new home purchased by Jack and Erin from home-builder Taylor Woodrow was defectively constructed, causing mold to grow in the home.[2] Taylor Woodrow moved to compel the Skufcas to arbitrate their claims under an arbitration provision contained in the Purchase Agreement signed by Jack and Erin to purchase the home. The trial court granted Taylor Woodrow's motion to compel arbitration of Jack's claims and Erin's individual claims, but it denied the motion as to the claims of the couple's two minor children asserted by Erin as the children's next friend. Taylor Woodrow recognizes that the minor children are nonsignatories to the Purchase Agreement but contends that the children are subject to the arbitration provision under the theories of third-party beneficiary and direct benefits estoppel. Because we conclude that Taylor Woodrow has not shown that the trial court abused its discretion in denying the motion to compel arbitration as to the children's claims, we affirm.

## Background

On September 27, 2016, Jack and Erin Skufca signed a Purchase Agreement with Taylor Woodrow, agreeing to purchase a new home to be constructed by Taylor

---

[1]     The record indicates that Taylor Morrison of Texas, Inc. is a limited partner of Taylor Woodrow Communities-League City, Ltd.

[2]     Jack Richard Skufca, Jr. and Erin Skufca, in her individual capacity, are not parties to this appeal.

Woodrow in the Mar Bella subdivision. Jack and Erin closed on the home in April 2017 and moved in with their two minor children.

In August 2019, the Skufcas sued Taylor Woodrow. Jack filed suit individually, and Erin filed suit individually and as next friend of their children. In their petition, the Skufcas alleged that, after living in their new home for less than one year, they developed concerns about mold. They claimed that they could smell mold in the home and that "[the] kids were continuously sick."

The Skufcas requested Taylor Woodrow to inspect the home. On February 17, 2018, a mold inspection company retained by Taylor Woodrow performed "a limited mold assessment." The company recommended that "a licensed professional" be hired "to evaluate and repair, as necessary, all water intrusion and/or excess moisture issues discovered." The company identified several issues related to "excessive condensation" associated with the heating, ventilation, and air conditioning (HVAC) system, including a problem "around the HVAC unit" in the attic.

The Skufcas alleged that Taylor Woodrow failed to disclose the recommendations of the mold inspection company to them until December 2018. They claimed that by that point, they had "suffered personal injury from contact with the mold during an investigation of their attic in October 2018."

The Skufcas hired a mold inspection company to conduct a "more extensive mold assessment" and an HVAC company to evaluate the home's HVAC system.

The Skufcas allege that "inspections and testing" by the companies showed "unacceptably elevated levels of mold and mycotoxins" in their home. They learned that "[d]ue to construction defects related to the HVAC system," mold was growing in the system, including the air ducts, requiring the HVAC system and all duct work to be replaced. The mold inspection company also determined that the home had other construction defects, including defects with the home's roof, shower and tub installation, insulation, and "water-proofing system."

The Skufcas alleged that, "[p]rior to entering into the sales contract and prior to the closing, [Taylor Woodrow] knew of significant mold and/or moisture problems that had occurred and were developing in identical and/or similar homes and floorplans" in the Mar Bella subdivision and "failed to disclose this significant information" to them. The Skufcas asserted that Taylor Woodrow was also "guilty of negligent conduct" by engaging in the following conduct:

A. Failing to properly design, construct, install and inspect the HVAC systems and attic design in the real property in question to discover and remediate the dangerous condition;

B. Failing to give adequate and understandable warnings to Plaintiffs of the unsafe condition of the roof, attic, interior and HVAC System;

C. Failing to provide warnings to Plaintiffs of the unsafe condition;

D. Withholding knowledge of the construction defects plaguing [the Skufcas'] and neighbors' home and causing personal injuries;

E. Failing to remove the toxic mold causing injury; [and]

4

F. Failing to design a full and complete remedy.

The Skufcas claimed that Taylor Woodrow's "acts and omissions of negligent conduct constituted the proximate cause of serious personal injury and other damages." The petition stated, "As a direct and proximate result of the occurrences made the basis of this lawsuit, [Taylor Woodrow's] negligent and/or intentional acts as described herein, Plaintiffs (Mrs. Skufca and the two minors, [KSX] and [KSXX], specifically) have suffered physical injury and illness, and continue to endure anxiety, pain, and illness resulting in damages." With respect to the children, the petition alleged that "the mold caused and/or aggravated, exacerbated or accelerated an otherwise nonexistent, undetectable or benign reactive airway disease and/or asthma," requiring the children to take "daily medication."

The petition listed causes of action against Taylor Woodrow for breach of contract, breach of implied warranties, negligent construction, statutory fraud in a real estate transaction,[3] violations of the Deceptive Trade Practices Act,[4] and quantum meruit. The damages requested ranged from costs to repair the home to past and future medical expenses as well as exemplary damages and attorney's fees. The Residential Construction Liability Act[5] was also identified as a basis for relief.

---

[3]    *See* TEX. BUS. & COM. CODE § 27.01(a).

[4]    *See* TEX. BUS. & COMM. CODE §§ 17.41–.63.

[5]    *See* TEX. PROP. CODE §§ 27.001–.007.

5

Taylor Woodrow filed a motion to abate the proceedings and to compel the Skufcas to arbitrate their claims pursuant to an arbitration clause found in "Paragraph 11" of the Purchase Agreement. The arbitration clause waives the parties' rights "to have disputes litigated in a court or [by] jury trial" and required that disputes be resolved by binding arbitration under the Federal Arbitration Act[6] ("FAA"). The first page of the Purchase Agreement references "Paragraph 11," stating that the paragraph requires "mandatory binding arbitration of, among other things, any dispute arising out of or relating to the terms of this purchase agreement or the planning, design, engineering, grading, construction or other development of the property." More specifically, Paragraph 11 provides, in part, as follows:

> 11) DISPUTE RESOLUTION—ARBITRATION:
>
> ANY AND ALL CLAIMS, CONTROVERSIES, BREACHES OR DISPUTES BY OR BETWEEN THE PARTIES HERETO, ARISING OUT OF OR RELATED TO THIS PURCHASE AGREEMENT, THE PROPERTY, THE SUBDIVISION OR COMMUNITY OF WHICH THE PROPERTY IS A PART . . . WHETHER SUCH DISPUTE IS BASED ON CONTRACT, TORT, STATUTE, OR EQUITY, INCLUDING WITHOUT LIMITATION, ANY DISPUTE OVER (a) THE DISPOSITION OF ANY EARNEST MONEY DEPOSITS HEREUNDER, (b) BREACH OF CONTRACT, (c) NEGLIGENT OR INTENTIONAL MISREPRESENTATION OR FRAUD, (d) NONDISCLOSURE, (e) BREACH OF ANY ALLEGED DUTY OF GOOD FAITH AND FAIR DEALING, (f) ALLEGATIONS OF LATENT OR PATENT DESIGN OR CONSTRUCTION DEFECTS, . . . (g) THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE . . . DESIGN, ENGINEERING . . . CONSTRUCTION . . . OF

---

[6] *See* 9 U.S.C. §§ 1–16.

THE PROPERTY, (h) DECEPTIVE TRADE PRACTICES . . . SHALL BE ARBITRATED PURSUANT TO THE FEDERAL ARBITRATION ACT . . . .

At the hearing on the motion to compel arbitration, Jack and Erin Skufca agreed that they are signatories to the Purchase Agreement. However, Erin Skufca, as next friend of the children, asserted that the children are not signatories to the agreement and, therefore, the children's claims are not subject to arbitration. Taylor Woodrow responded that the children are required to arbitrate their claims because they are third-party beneficiaries under the Purchase Agreement and because they are equitably estopped from asserting that they are not subject to the arbitration provision.

Following the hearing, the trial court ordered Erin and Jack Skufca to arbitrate their individual claims against Taylor Woodrow but denied the motion to compel arbitration as to the children's claims.[7] Taylor Woodrow filed this interlocutory appeal, asserting in one issue that the trial court abused its discretion when it denied Taylor Woodrow's motion to compel arbitration of the children's claims.

**Motion to Compel Arbitration of Minor Children's Claims**

On appeal, Taylor Woodrow contends that, although the minor children are not signatories to the Purchase Agreement, it can enforce the arbitration clause

---

[7]     In a later order, the trial also denied compelling arbitration of the parents' claims. Taylor Woodrow has separately appealed that order in appellate cause number 01–20–00638–CV.

7

against the minor children because they are third-party beneficiaries of the agreement and are subject to the arbitration provision under the theory of equitable estoppel.

## A.    Legal Principles Governing Motions to Compel Arbitration

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115.

In general, a party seeking to compel arbitration under the FAA, as here, must establish (1) that there is a valid agreement to arbitrate and (2) that the claims raised fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). The dispute in this case centers on whether the arbitration clause in the Purchase Agreement, signed by Jack and Erin Skufca, binds their two minor children to arbitrate their claims. As a gateway matter involving validity, whether an arbitration agreement binds a non-signatory must be decided by the court, not the arbitrator. *In re Weekley Homes*, *L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). A trial court's determination of an arbitration agreement's validity

is a question of law that we review de novo, applying state law governing the validity, revocability, and enforceability of contracts generally. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631, 633 (Tex. 2018).

The presumption favoring arbitration arises only after the party seeking to compel arbitration establishes a valid agreement to arbitrate because "the purpose of the FAA is to make arbitration agreements as enforceable as other contracts, not more so." *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737–38. Generally, only signatories will be bound to an arbitration provision. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011). Nonsignatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). (orig. proceeding). According to principles of contract and agency law, arbitration agreements may bind nonsignatories under any of six theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739.

Because the party moving to compel arbitration has the burden to show a valid agreement to arbitrate, "[t]he party seeking arbitration bears the burden of establishing that the arbitration agreement binds a nonsignatory." *Santander Consumer USA, Inc. v. Mata*, No. 03–14–00782–CV, 2017 WL 1208767, at *2 (Tex. App.—Austin Mar. 29, 2017, no pet.) (mem. op.); *see Glassell Producing Co. v.*

9

*Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.). Here, Taylor Woodrow asserts that the children are bound to arbitrate their claims under the theories of third-party beneficiary and equitable estoppel. We must determine whether Taylor Woodrow met its burden to show, by rules of law and equity, that the children are bound by the arbitration provision in the Purchase Agreement even though they are nonsignatories to the agreement. *See Albertson's Holdings, LLC v. Kay*, 514 S.W.3d 878, 884 (Tex. App.—Tyler 2017, no pet.) (analyzing whether appellants met their burden to show that, by rules of law or equity, arbitration agreement applied to nonsignatory).

## B.    Third-Party Beneficiary

A third-party beneficiary to a contract may compel or be compelled to arbitrate under an arbitration provision in a contract. *See In re Next Fin. Group Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (orig. proceeding) (holding employer third-party beneficiary could compel arbitration); *In re Rangel*, 45 S.W.3d 783, 787 (Tex. App.—Waco 2001, orig. proceeding) (holding that, because wife was third-party beneficiary of husband's contract, she was bound by contract's arbitration provision). A person's status as a third-party beneficiary depends solely on the contracting parties' intent. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)). "Specifically, a person seeking to establish third-party-beneficiary status must demonstrate that the

contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'" *Id.* (quoting *Stine*, 80 S.W.3d at 589); *see S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) ("A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit.").

The Supreme Court of Texas has made clear that "there is a presumption against, not in favor of, third-party beneficiary agreements." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). "To determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole." *Brumitt*, 519 S.W.3d at 102. "The contract must include 'a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *Id.* at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

The fact that the third party would benefit from the parties' performance of the contract is not enough to confer third-party beneficiary status. *See id.* at 102–03 (explaining that controlling factor in determining third-party beneficiary status is "the absence of any sufficiently clear and unequivocal language [in the contract]

11

demonstrating the necessary intent" to directly benefit third party). "To create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a 'claimant' in the event of a breach." *Id.* at 102 (quoting *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 505 (Tex. 1975)).

Here, the Purchase Agreement contains no language indicating that the parties to the agreement, Taylor Woodrow and the children's parents, intended the agreement to directly benefit the children. *See id.* at 102–03. The agreement does not mention the children, and, on its face, the agreement appears only to be for the benefit of the children's parents, who were purchasing the home. *See Lincoln Fin. Advisors Corp. v. Ards*, No. 03-18-00437-CV, 2019 WL 6907074, at *5 (Tex. App.—Austin Dec. 19, 2019, no. pet.) (mem. op.) (holding that non-signatory minor child was not subject to arbitration as third-party beneficiary when agreements "had no express reference" that parties to agreements "intended the agreements to be for the direct benefit of [the child]"); *In re SSP Partners*, 241 S.W.3d 162, 169 (Tex. App.—Corpus Christi-Edinburg 2007, orig. proceeding) ("There is no provision in the agreement stating that Garcia, on behalf of her children, was agreeing to submit the children's claims to arbitration."); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1076 (5th Cir. 2002) (noting that "contract does not mention the Gaskamp children at all and [that] there is no indication in the contract that it is designed to benefit anyone other than the Gaskamp parents, who purchased the home"). If there

12

was any intention to confer a direct benefit on the children, the intention was not shown by clear and unequivocal language in the Purchase Agreement. Although the children lived in the home before suit was filed, that would, at most, render them incidental beneficiaries of the contract, not third-party beneficiaries. *See Gaskamp*, 280 F.3d at 1076. Because the conferred benefit must be more than incidental, the Purchase Agreement does not show that the children are third-party beneficiaries. *See Jody James Farms*, 547 S.W.3d at 635 ("The benefit must be more than incidental, and the contracting parties' intent to confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied.") (internal quotation marks omitted).

To support its position that the children are third-party beneficiaries, Taylor Woodrow does not cite any provision in the agreement but instead points to language in the original petition found under the caption "Breach of Contract," which states, "The Plaintiffs were the beneficiary [sic] of the contract." Taylor Woodrow asserts that this language constitutes a judicial admission that the children were third-party beneficiaries under the Purchase Agreement.

"A judicial admission occurs when a party makes a statement of fact that conclusively disproves a right of recovery or defense he currently asserts." *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (internal quotation marks omitted). However, absent

contractual ambiguity, whether a party is a third-party beneficiary under a contract is a question of law, not a question of fact. *See Brumitt*, 519 S.W.3d at 105. It is well-established that a party may not judicially admit a question of law. *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.); *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.). Here, no contractual ambiguity is claimed regarding the question of third-party beneficiary. And, as discussed below, it is unclear that the children are "Plaintiffs" asserting a breach of contract claim. However, even if the children are "Plaintiffs" for this claim, the breach-of-contract language in the petition does not constitute a judicial admission that the children are third-party beneficiaries because that determination is a question of law governed by the language in the agreement reflecting the contracting parties' intentions. *See Brumitt*, 519 S.W.3d at 105. Based on the Purchase Agreement's language, we conclude that the Skufca children were not bound to arbitrate their claims against Taylor Woodrow under the theory of third-party beneficiary.

## C.    Direct Benefits Estoppel

Taylor Woodrow also contends that the children are bound to arbitrate their claims under the theory of direct benefits estoppel, a type of equitable estoppel. *See Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 739; *see D.R. Horton-Emerald, Ltd. v.*

*Mitchell*, No. 01-17-00426-CV, 2018 WL 542403, at \*6–7 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.) (mem. op.) (discussing direct benefits estoppel). Under the doctrine of direct benefits estoppel, nonsignatory plaintiffs who seek the benefits of a contract or who seek to enforce the terms of a contract are "estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 739. As a result, when nonsignatories sue based on a contract, they subject themselves to the contract's terms, including any arbitration agreement. *G.T. Leach Builders, LLC v. Sapphire V.P.*, *LP*, 458 S.W.3d 502, 527 (Tex. 2015). Under those circumstances, the nonsignatory must arbitrate all his claims—tort and contract—if the claims fall within the scope of the arbitration agreement. *Weekley Homes*, 180 S.W.3d at 132. A nonsignatory sues "based on a contract" when he "seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 741; *see MAG Portfolio Consult., GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ("The benefits must be direct—which is to say, flowing directly from the agreement.").

"Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *Weekley Homes*, 180 S.W.3d at 131–32. "When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability arises solely from the

contract or must be determined by reference to it—equity prevents a person from avoiding the arbitration clause that was part of that agreement." *Jody James Farms*, 547 S.W.3d at 637 (internal quotation marks omitted). But "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties or federal law, rather than from the contract, direct benefits estoppel does not apply, even if the claim refers to or relates to the contract." *G.T. Leach Builders*, 458 S.W.3d at 528 (internal quotation marks omitted). A nonsignatory "cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, [he] would have no basis to sue." *Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 740. It is not enough that the claim simply relates to the contract; the claim must "depend on the existence" of the contract and be "unable to stand independently" of it. *G.T. Leach Builders*, 458 S.W.3d at 527–28. If a nonsignatory's claims can stand independently of the contract, then arbitration should not be compelled. *Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 739–40.

Here, the children allege claims independent of the Purchase Agreement. The Skufcas' original petition (their live pleading) reflects that the children assert claims sounding in tort, alleging personal injuries.[8] The crux of these claims is that Taylor

---

[8] In determining whether Taylor Woodrow has shown that it has a valid arbitration agreement with the Skufca children, we express no opinion about the merits of any of the Skufcas' claims. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475

Woodrow negligently constructed the home purchased by Jack and Erin Skufca, resulting in mold growth, which made the children ill. The petition alleges that, after moving into the home, the children were "continuously sick." The petition specifically alleges that the children "suffered physical injury and illness, and continue to endure anxiety, pain, and illness resulting in damages." The pleading avers that "the mold caused and/or aggravated, exacerbated or accelerated an otherwise nonexistent, undetectable or benign reactive airway disease and/or asthma" in the children, requiring them to take "daily medication." The petition requests corresponding damages for past and future medical expenses, pain and suffering, and mental anguish.

The petition avers that Taylor Woodrow owed the children a duty of care with respect to constructing the home, which was not met. The petition asserts that Taylor Woodrow was "guilty of negligent conduct" by failing to properly design and construct the home, failing to provide adequate warnings about the home's known defects, withholding information about mold problems with similarly-designed homes, and failing to remediate the mold. Rather than relying on an obligation under the Purchase Agreement, the children base Taylor Woodrow's negligence liability on a common-law tort duty. *See Toll Austin, TX, LLC v. Dusing*, No. 03–16–00621–

---

U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

CV, 2016 WL 7187482, at *3 (Tex. App.—Austin Dec. 7, 2016, no pet.) (mem. op.) (rejecting direct benefits estoppel theory when subsequent purchaser sued homebuilder for negligence and DTPA violations and determining that those claims did not arise from construction contract; rather, they arose from "general obligations imposed by common-law negligence and relevant statutes").

Taylor Woodrow asserts that the children are required to arbitrate their negligence claims under the theory of direct benefits estoppel because, in addition to their negligence claims, the children have joined other causes of action with their parents, which, according to Taylor Woodrow, include causes of action dependent on the Purchase Agreement. *See Weekley Homes*, 180 S.W.3d at 132. Taylor Woodrow contends that no effort was made to distinguish the children's claims from their parents' claims. In making this assertion, Taylor Woodrow relies on language in the petition that includes the children as "Plaintiffs" along with their parents. Taylor Woodrow points out that among the listed causes of action asserted by "Plaintiffs" is breach of contract.

While the petition reflects that "Plaintiffs" are asserting a breach of contract cause of action, a holistic review of the pleading—as opposed to a narrow reliance on the bare cause of action—reveals that the petition is insufficiently specific to conclude that the children are joining their parents' breach of contract cause of action. With respect to that cause of action, the petition alleges that "Plaintiffs had a

valid, enforceable contract in place" and "Plaintiffs were the beneficiary [sic] of the contract," but the Purchase Agreement, appended to and referenced in the petition, shows that only the children's parents entered into the alleged "valid, enforceable contract" with Taylor Woodrow, and the agreement does not indicate that it was entered into on behalf of or for the benefit of the children. The children had no legal basis to sue for breach of the contract because they are neither parties to the Purchase Agreement nor third-party beneficiaries. *See Brumitt*, 519 S.W.3d at 102 (stating that benefits and burdens of contract belong solely to contracting parties, and no person can sue on a contract unless he is party to it, in privity with it, or qualifies as third-party beneficiary); *see also Jody James Farms*, 547 S.W.3d at 638–39 (noting that nonsignatory could not legally maintain claim on contract with arbitration provision in determining that direct benefits estoppel was not shown). The allegations comprising the breach of contract cause of action, when viewed in the context of the whole pleading and the Purchase Agreement, cuts against reading "Plaintiffs" to include the children as breach of contract claimants and instead supports reading "Plaintiffs" as limited to the children's parents, suing in their individual capacities.[9]

---

[9]     Taylor Woodrow relies on *In re Ford Motor Company* in which minor children sued an auto manufacturer, following the death of their father in a rollover auto accident, for breach of an express warranty contained in a contract signed by the children's parents to purchase the vehicle. 220 S.W.3d 21, 22 (Tex. App.—San Antonio 2007, no pet.). The court determined that the children were bound to arbitrate their claims

Likewise, the allegations underlying the claim for statutory fraud in a real estate transaction supports interpreting "Plaintiffs" for that claim as being only the children's parents. To establish statutory fraud, a person must show a false representation or false promise about a material fact made to induce the person to enter into a contract and that the person relied on the misrepresentation or false promise in entering into the contract. *See* TEX. BUS. & COM. CODE § 27.01(a). The person making the false representation or promise is liable to the defrauded person for actual damages. *See id.* § 27.01(b). Here, the statutory fraud claim in the petition is based on allegations that "Plaintiffs" relied on Taylor Woodrow's alleged misrepresentations about the home's quality and condition in deciding to enter into the Purchase Agreement. Because only the parents entered into the Purchase Agreement—and therefore only the parents could have been defrauded—the statutory fraud cause of action cannot reasonably be read to include the children as "Plaintiffs." *See id.* § 27.01(a).

The pleading also presents ambiguity regarding whether the children have asserted a claim for breach of implied warranties. The petition generally states that

---

under an arbitration provision in the contract based on direct benefits estoppel. *Id.* at 24. There, it was clear that the children were asserting claims related to their father's death based on the contract containing the arbitration provision signed by their deceased father and their mother. Here, as discussed, it is not clear that the children are pursuing a breach of contract cause of action in addition to bringing tort claims for their own personal injuries.

20

Taylor Woodrow has violated the implied warranties of habitability and good workmanship; however, the pleading does not identify which of the Skufcas are asserting the breach of implied warranties cause of action. *See D.R. Horton-Emerald*, 2018 WL 542403, at \*7 (holding that lack of specificity in pleading prevented determination that nonsignatories, asserting construction-defect claim, were seeking direct benefit from construction contract containing arbitration clause). Given Taylor Woodrow's reliance on the children being included in the term "Plaintiffs," we also note that the petition sometimes refers to "Plaintiff" in the singular, rather than "Plaintiffs" in the plural, when asserting a cause of action and requesting relief. The lack of consistency heightens the uncertainty in interrupting the petition, particularly when contrasted with the detail with which the petition presents the factual allegations underlying the children's negligence claims. In sum, considering the ambiguity and lack of clarity in the petition regarding the breach of contract, statutory fraud, and breach of implied warranty causes of action, those claims do not sufficiently support an application of direct benefits estoppel to bind the children to the arbitration provision. *See id.*; *ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 277 (Tex. App.—Beaumont 2014, no pet.) (determining that defendant did not satisfy its burden to show that direct benefits estoppel applied to require arbitration of premises liability claim when petition was ambiguous regarding whether plaintiff relied on contractual provision, establishing that defendant retained

21

contractual right of control over premises); *Glassell Producing Co.*, 422 S.W.3d at 83 (concluding that defendant did not carry its burden to show that equitable estoppel required arbitration of plaintiff's claims when plaintiff's pleadings were vague and did not clearly indicate that liability under claims required reference to contract containing arbitration clause).

With respect to the last two causes of action in the petition—violation of the DTPA and quantum meruit—neither supports binding the children to the arbitration agreement.[10] In *Jody James Farms*, the Supreme Court of Texas determined that the appellant's DTPA claims did not bind it to arbitration based on direct benefits estoppel. *See* 547 S.W.3d at 638. The court reached the decision because "DTPA claims are created by statute," *id.* (citing TEX. BUS. & COMM. CODE § 17.43), and "'a DTPA claim for misrepresentation is considered separate and distinct from any breach of contract,'" *id.* (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 270–71 (Tex. 1992)).

The petition also lists "quantum meruit" as a cause of action. Quantum meruit is an equitable remedy based upon an implied promise to pay for beneficial services

---

[10]     Taylor Woodrow also contends that the children have joined their parents' claims under the Residential Construction Liability Act (RCLA). *See* TEX. PROP. CODE §§ 27.001–.007. We note, however, that the RCLA does not create a cause of action; rather, it limits and controls existing causes of action for damages resulting from construction defects in residences. *D.R. Horton-Emerald, Ltd. v. Mitchell*, No. 01-17-00426-CV, 2018 WL 542403, at *7 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.) (mem. op.).

rendered by the plaintiff. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018). The purpose of the doctrine is to prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return. *Id.* Here, the allegations in the petition offered under the heading "quantum meruit" do not align with a cause of action for that claim. The Skufcas did not provide services to Taylor Woodrow; instead, the Skufcas paid Taylor Woodrow for the newly constructed home. In any event, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not its title. *See Weekley Homes*, 180 S.W.3d at 131–32.

Regarding this claim, the petition alleges that the Skufcas paid Taylor Woodrow for the construction of their home pursuant to an "implied contract" and that Taylor Woodrow's "negligent actions caused Plaintiffs additional damages and costs" because "the purpose for which the Plaintiffs retained Defendants, to build the house, was not properly done." The pleading indicates that the claim was being asserted to prevent "unjust enrichment."

As pleaded, the claim does not support an application of direct benefits estoppel because it does not seek to derive a direct benefit from the Purchase Agreement. *Cf. Kellogg Brown & Root*, *Inc.*, 166 S.W.3d at 740–41 (holding that nonsignatory subcontractor, Kellogg, was not required to arbitrate quantum meruit claim against contractor based on arbitration clause in agreement between contractor

23

and another subcontractor because Kellogg did not seek direct benefit from that agreement even though its work was related to and to some degree was defined by that agreement). Rather than relying on the Purchase Agreement, the claim, as pleaded, appears to base Taylor Woodrow's liability on principles of negligence and equity. *See Jody James Farms*, 547 S.W.3d at 638 (concluding that nonsignatory was not bound to arbitrate under contract containing arbitration provision because, even if nonsignatory's claim refers to contract, liability alleged by nonsignatory was not based on contract but was instead premised on "on tort and DTPA duties" that are general, non-contract obligations).

As the party seeking to compel arbitration, Taylor Woodrow had the burden to prove that the children's claims sought a direct benefit from the Purchase Agreement. Given the record, we conclude that Taylor Woodrow failed to meet its burden. Direct-benefits estoppel has not been shown here. *See id.*; *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 740–41; *see also D.R. Horton-Emerald*, 2018 WL 542403, at \*7; *Gatlin*, 449 S.W.3d at 277; *Glassell Producing Co.*, 422 S.W.3d at 83.

## Conclusion

"No party may be compelled to arbitrate unless they have agreed to arbitrate or are bound by principles of agency or contract law to do so." *Jody James Farms*, 547 S.W.3d at 640. Based on the record, we conclude that the trial court could have properly determined that Taylor Woodrow failed to show (1) that the children are

third party beneficiaries of the Purchase Agreement or (2) that they are equitably estopped from denying the arbitration clause. We hold that Taylor Woodrow has not shown that the trial court abused its discretion when it denied its motion to compel arbitration of the children's claims. Accordingly, we overrule Taylor Woodrow's sole issue,[11] and we affirm the order of the trial court denying the motion to compel arbitration as to the claims brought by Erin Skufca as next friend of the two minor children.

Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Hightower.

---

[11] Taylor Woodrow also asserts that the children's claims are within the scope of the arbitration clause and that Taylor Morrison—Taylor Woodrow's limited partner— had the authority to join the motion to compel as a third-party beneficiary under the arbitration agreement. Given our determination that the children are not required to arbitrate their claims, we do not address these subpoints.