**Opinion issued March 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00777-CV

————————————

**NATIONWIDE COIN & BULLION RESERVE, INC. AND DALLAS PASKELL, TURNER JONES, LAWRENCE KUYKENDALL, AND MELIDA JONES, Appellants**

**V.**

**WILLIAM CIARLONE, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-57418**

---

## MEMORANDUM OPINION

This case concerns coins purchased by William Ciarlone. In this interlocutory appeal, Nationwide Coin and Bullion Reserve, Inc. and four individuals associated with the company (collectively "Nationwide") appeal the

denial of their motion to compel arbitration. We conclude that the appellants failed to establish the existence of an arbitration agreement. We affirm the trial court's denial of the motion to compel arbitration.

## Background

In November 2017, Ciarlone spoke with a Nationwide sales representative on multiple occasions regarding his interest in purchasing coins. Some of the calls were lengthy. Eventually, Ciarlone told the representative that he had $83,295 cash. The representative offered to sell a set of five coins for $83,295. The representative stated that the coins were worth more than the price offered but that Nationwide was willing to offer Ciarlone a special deal at a reduced price. In a November 29, 2017 phone call with the representative, Ciarlone agreed to pay $83,295 for the coin set. During the call, they finalized the payment method and delivery schedule. Ciarlone agreed to mail a check through a shipping service the same day.

The following day, after Ciarlone had sent the check, another Nationwide representative called him purporting to verify the previously agreed upon transaction. Ciarlone stated that he had postdated his check for $83,295 to December 1, 2017 to ensure that sufficient cash was in his checking account. During the brief confirmation call the following exchange took place:

Nationwide:     Okay sir, well I have one last closing statement. The precious metals and rare coin markets are

2

speculative, unregulated, and prices for these items may rise or fall over time. All claims or disputes related to this sale are subject to binding arbitration in Harris County, Texas. Do you agree and understand these terms and conditions?

Ciarlone: Yes.

Nationwide: And do you authorize Nationwide Coin and Bullion Reserve to deposit your check once it's received for the full amount of $83,295?

Ciarlone: $83,295.00. Yes.

Nationwide. Great, thank you so much for your time, sir. Hope you have a great day.

Ciarlone: Bye.

Ciarlone received the coins on December 1, 2017. Nationwide included an invoice/packing slip with the coins. On the back of the invoice/packing slip was the following:

**ARBITRATION:** All claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the State of Texas, County of Harris. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Any decision or award as a result of any such arbitration proceeding shall be in writing and shall provide an explanation of all conclusions of law and fact and shall include the assessment of costs, expenses and reasonable attorneys' fees. Any such arbitration shall be conducted by an arbitrator experienced in precious metals and shall include a written record of the arbitration hearing. The parties reserve the right to object to any individual who shall be employed by or affiliated with a competing organization or entity. An award of arbitration may be confirmed in a court of competent jurisdiction.

Sometime later, a dispute arose about the coins. On August 19, 2019, Nationwide sought a declaratory judgment that the arbitration provision on the back of the invoice/packing slip was enforceable. Ciarlone answered and included affirmative defenses. He also filed counterclaims against the company and individuals associated with it. In April 2020, Ciarlone propounded written discovery requests upon Nationwide. In July 2020, Ciarlone moved for summary judgment. In September 2020, Ciarlone moved to compel Nationwide's responses to his interrogatories and requests for production.

Nationwide moved to compel arbitration under the Texas Arbitration Act and abate the proceedings.[1] Nationwide argued that there was a valid agreement to arbitrate, the agreement assigned arbitrability to the arbitrator, and it had not waived arbitration by engaging in the judicial process. Specifically, Nationwide argued that the arbitration clause was on the back of the invoice/packing slip and was confirmed in the November 30, 2017 confirmation call. Ciarlone responded, denying the existence of an agreement to arbitrate. Ciarlone also argued that Nationwide had waived its right to compel arbitration by participating in litigation. After a non-evidentiary hearing, the trial court denied Nationwide's motion to compel arbitration. Nationwide now appeals the trial court's decision.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 171.001—.098.

4

**Existence of Agreement to Arbitrate**

Nationwide argues that the question of arbitrability should be decided by the arbitrator because the parties had a valid agreement to arbitrate. Ciarlone responds that the trial court did not err because Nationwide did not establish the existence of a valid agreement to arbitrate. We agree with Ciarlone.

Nationwide seeks to compel arbitration under the Texas Arbitration Act (the "TAA"), which provides that "[a] written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement." TEX. CIV. PRAC. & REM. CODE § 171.001(a). A party seeking to compel arbitration under the TAA must first establish, as a threshold matter, that there exists a valid arbitration agreement and that the claims in dispute fall within the scope of that agreement. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the party seeking arbitration establishes the existence of a valid agreement, the burden shifts to the party resisting arbitration to raise an affirmative defense to enforcement. *J.M. Davidson, Inc.*, 128 S.W.3d at 227.

**A.     Standard of Review**

"When reviewing a denial of a motion to compel arbitration, we defer to the trial court's factual determinations that are supported by evidence but review the

5

trial court's legal determinations de novo." *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). Whether a valid arbitration agreement exists is a question of law that we review de novo. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

The trial court signed an order denying Nationwide's motion to compel arbitration and did not issue written findings of fact or conclusions of law. Therefore, we affirm the court's judgment "if it can be upheld on any legal theory that finds support in the evidence." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

## B. Applicable Law

Ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Kellogg Brown & Root*, 166 S.W.3d at 738. The elements of a valid contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

"An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." TEX. BUS. & COM. CODE § 2.206(a)(2). Additional terms are construed as proposals for addition

6

to the contract. *Id.* § 2.207(b). In transactions between merchants, such proposed additional terms may automatically become part of the contract. *Id.*[2]

## C.    Analysis

There is no valid agreement to arbitrate because the arbitration provision was not part of the original contract between the parties nor was it part of an accepted new or modified contract.

### 1.    The arbitration provision was not part of the sales contract.

On November 30, 2020, Ciarlone sent a check to pay for the coins to Nationwide. When Ciarlone received the coins the next day, he received an invoice/packing slip. The arbitration provision on which Nationwide relies was printed on the back of the invoice/packing slip along with other terms and conditions. At the time Ciarlone received the invoice/packing slip, the sales contract had already been completed.

A sales contract was formed upon the promise to ship, or at the latest the shipment of, the coins. *See* TEX. BUS. & COM. CODE § 2.206(a)(2); *see also Hatch v. Jones*, 4:18-CV-4146, 2019 WL 6137389, at *4 (S.D. Tex. Oct. 30, 2019), report and recommendation adopted, 2019 WL 6135119 (S.D. Tex. Nov. 15, 2019). In *Hatch*, the plaintiff sued Nationwide and its sales representatives based on evidence that is nearly identical to the evidence presented here. Nationwide sought

---

[2]    Neither party contends that Ciarlone is a merchant.

to compel arbitration based on an affidavit from a sales representative and on the terms and conditions that appeared on the back of the invoice/packing slip received by the purchaser with the shipment of coins. *Hatch*, 2019 WL 6137389, at *1. The sales representative attested that the plaintiff agreed to the terms and conditions by phone. The court concluded that the arbitration provision printed on the invoice and sent to the purchaser was insufficient because it was sent to the purchaser after the contract was formed. *Id.* at *4.

The Fourteenth Court of Appeals reached the same conclusion regarding the existence of an arbitration agreement in a similar case. *See Nationwide Coin & Bullion Reserve, Inc. v. Thomas*, 625 S.W.3d 498, 506 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). In that case, an individual sued Nationwide regarding multiple coin purchase transactions. *Id.* at 502. Nationwide moved to compel arbitration, and the trial court denied the motion. *Id.* On appeal, the Fourteenth Court upheld the trial court's denial of the motion. *Id.* at 507. The court held that the arbitration provision was not part of the sales contract. *Id.* at 506. The provision appeared only on the back of the invoice given to the individual after each transaction was complete. *Id.* There, as here, Nationwide argued that the plaintiff agreed to the terms and conditions by phone. *Id.* The court held that the contract to purchase and ship the coins was formed and completed before the invoice with the arbitration provision was sent. *Id.* (citing TEX. BUS. & COM. CODE § 2.206(a)(2)).

The court held that the written arbitration agreement was not sent to the purchaser until after the sales contract had already been completed. *Id.* Therefore, it was insufficient to bind the purchaser. *Id.*

Ciarlone offered to buy coins from Nationwide, and Nationwide accepted that offer when it either promised shipment or actually shipped the coins. *See* TEX. BUS. & COM. CODE § 2.206(a)(2). Ciarlone paid Nationwide and received the coins before he received the written agreement to arbitrate. *See Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.*, No. 01-09-00030-CV, 2009 WL 3673823, at *7–9 (Tex. App.—Houston [1st Dist.] Nov. 5, 2009, no pet.) (mem. op.) (holding that arbitration agreement on the back of invoices was not a meeting of the minds to form contract). Ciarlone and the Nationwide sales representative had established the terms for an oral contract for the exchange of the coins during the November 27, 2019 phone call. Ciarlone then sent his check to Nationwide, and Nationwide delivered the coins. *See* TEX. BUS. & COM. CODE § 2.201(c)(3) (contract which does not satisfy the statute of frauds is enforceable with respect to goods "for which payment has been made and accepted or which have been received and accepted."). Accordingly, the sales contract was fully performed before Ciarlone received the arbitration clause on the packing slip.

Under the evidence presented, the arbitration clause was a mere proposal for an additional term. Nationwide has failed to demonstrate Ciarlone's acceptance of

the proposed terms. Ciarlone received the additional terms on the back of the invoice/packing slip after the sales contract had been completed. Nationwide argues that there is a valid agreement to arbitrate because signature and delivery are not required to demonstrate the existence of a contract. *See Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015) (stating contract need not be signed to be executed if written document is submitted to both parties and each expresses unconditional assent). Nationwide has not provided any evidence to show that Ciarlone expressed his assent to the additional terms he received on the invoice. *Id.* As Ciarlone was not a merchant, the additional terms were not automatically added to the contract. *See* TEX. BUS. & COM. CODE § 2.207(b). There is no evidence indicating that Ciarlone saw and assented to the additional terms. *See Stewart & Stevenson, LLC*, 2009 WL 3673823 at \*9; *Hatch*, 2019 WL 6137389 at \*4.

### 2. The arbitration agreement was not part of an accepted modification or new contract.

The arbitration clause was also not a modification to the existing contract or a new contract. A new contract or a modification of the parties' existing contract requires a meeting of the minds. *Hatch*, 2019 WL 6137389 at \*5; *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228–29 (Tex. 1986) ("A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration. Whether a contract is modified depends on the parties'

10

intentions[.]") (citations omitted). "The determination of a meeting of the minds . . . is based on the objective standard of what the parties said and did." *Stewart & Stevenson, LLC*, 2009 WL 3673823, at *7 (citing *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

Nationwide did not demonstrate that there was a meeting of the minds after Ciarlone received the written proposal. Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). There is no evidence that Ciarlone signed the invoice/packing slip indicating his assent to the additional arbitration term. Nationwide also has not submitted evidence that demonstrates that Ciarlone assented to the arbitration provision after he received the invoice. Under these facts, an arbitration agreement on the back of an invoice, which is provided to the buyer after the transaction is complete, is not enough to show a meeting of the minds for contract formation and modification. *Hatch*, 2019 WL 6137389, at *5.

Finally, to the extent Nationwide argues that the verification call demonstrates an agreement to arbitrate, it is insufficient. The TAA applies only to

11

written agreements to arbitrate. *See* TEX. CIV. PRAC. & REM. CODE § 171.001. The parties could not be compelled to arbitration based on purported oral agreements.[3]

Nationwide did not meet its burden to prove that an agreement to arbitrate existed. *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737 (party seeking to compel arbitration under the TAA must first establish existence of arbitration agreement); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. The trial court did not abuse its discretion in denying the motion to compel arbitration.

Because we affirm the denial of arbitration on the basis that there was no agreement to arbitrate, we need not reach Nationwide's alternative grounds for reversing the trial court. *See* TEX. R. APP. P. 47.1.

---

[3]     The arbitration clause did not reference the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1–16 (FAA). Nationwide only sought to compel arbitration under the TAA. To the extent Nationwide also argues that the FAA applies, it does not. The FAA only preempts the TAA in specific situations, which are not found here. *See In Re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) ("For the FAA to preempt the TAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage, or (2) the TAA has imposed an enforceability requirement not found in the FAA.") (internal citations removed).

## Conclusion

We affirm the trial court's order.

Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Farris.